**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JOHN CASEY, SADIE ENFINGER,
and GREGORY SHANE CARTER,**
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.	CASE NO: 3:07cv421/RV/MD

**INTERNATIONAL PAPER COMPANY,
and MIKE S. STELTENKAMP,**

    Defendants.
_____/

## ORDER

This class action suit, originally filed in the Circuit Court of the First Judicial Circuit in Escambia County, arises out of an environmental problem allegedly created by the defendants, International Paper Company ("IPC") and Mike S. Steltenkamp. The defendants removed the case to federal court pursuant to the Class Action Fairness Act of 2005 [see 28 U.S.C. §§ 1332(d)] ("CAFA"), and the plaintiffs now seek to remand the case to state court on the basis of the so-called "local controversy exception" to CAFA jurisdiction (doc. 7).

**I.	BACKGROUND**

Defendant IPC is a New York corporation authorized to conduct business in Florida. IPC, previously known as Champion International Corporation, operates a paper mill in Pensacola. Defendant Steltenkamp is the Environmental Manager for the mill, and he is a resident of Escambia County, Florida. The named plaintiffs, on behalf of themselves and others similarly situated, are present or past owners and residents of properties that are in "close proximity" to the paper mill. The plaintiffs

contend that IPC and Steltenkamp regularly and periodically released particulate matter and other airborne materials from "ash pits" or "piles" located at the mill onto the plaintiffs' properties. The release of these materials allegedly caused damage to their lands, homes, fixtures, personal property, and persons.

On May 18, 2007, the plaintiffs, as noted, filed a class action complaint in state court. The plaintiffs alleged that both defendants knowingly or negligently engaged in the improper behavior described above. Notably, it was further alleged in the complaint that IPC (and only IPC)

> reaps tremendous economic benefit and avoids substantial costs by its failure to control and prevent particulate matter and other airborne materials, including associated hazardous substances, from being blown onto Plaintiffs' properties, by its use of Plaintiffs' properties as its own effective supplementary dumping grounds, and by its continuing use of the piles and its failure to remove the existing hundreds of thousands of tons of ash dumped near Plaintiffs' properties. Defendant INTERNATIONAL PAPER COMPANY could remove the ash and cease and desist from further creation and use of piles near residential properties but has chosen not to do so in order to save itself money, thus gaining the use and enjoyment of the saved money at the same time it has reduced the use and enjoyment of its neighbors' residential properties.

(Emphasis added). The plaintiffs stated six causes of action: (1) trespass; (2) nuisance; (3) unjust enrichment; (4) common law strict liability; (5) negligence; and (6) statutory strict liability. Each claim was asserted against both defendants, except the unjust enrichment claim, which was asserted only against IPC.

## II.   DISCUSSION

Congress enacted CAFA in February 2005, in an effort to curb class action abuses stemming from state and local courts "keeping cases of national importance out of Federal court," often demonstrating bias against out-of-state defendants,

and "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." Pub.L. No. 109-2, § 2(a)(4), 119 Stat. 4. Under CAFA, federal courts have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, there is minimal diversity (that is, at least one plaintiff and one defendant are from different states), and the putative class exceeds 100. See 28 U.S.C. § 1332(d). Even where these three elements are satisfied, however, there is an exception to federal jurisdiction under CAFA for cases that are local in nature. The party seeking to avoid CAFA jurisdiction on this basis bears the burden of proving that the case constitutes a "local controversy." See Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 n.55 (11th Cir. 2007).

In this case, the parties agree that the amount in controversy is greater than $5,000,000, there is minimal diversity, and the putative class size exceeds 100. The sole issue is whether this case falls within the local controversy exception to federal jurisdiction. Under this CAFA exception, I must decline jurisdiction and remand the case if: (1) greater than two thirds of the members of the putative class are citizens of the state in which the action was filed; (2) at least one defendant is a defendant from whom members of the putative class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the state in which the action was filed; (3) the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within three years of the filing of this class action. See 28 U.S.C. § 1332(d)(4).

The defendants argue that the local controversy exception does not apply because the plaintiffs cannot establish the first two elements set forth above. Specifically, according to the defendants, there is an insufficient basis to conclude that greater than two-thirds of the members of the class are Florida citizens, and

the plaintiffs have not established that Steltenkamp is a defendant from whom "significant relief" is being sought and whose conduct forms a "significant basis" for the claims asserted. No one disputes that the third and fourth elements of the local controversy exception are satisfied, and so they will not be discussed further.

The Eleventh Circuit has recognized that "CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" Evans v. Walter Industries, Inc., 449 F.3d 1159, 1163 (11th Cir. 2006) (*quoting* S. Rep. No. 109-14 at 42). The Senate Judiciary Committee Report on CAFA expressly states that the local controversy exception:

> is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, the Committee wishes to stress that in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy --- a controversy that uniquely affects a particular locality to the exclusion of all others.

Id. at 1163-64 (*quoting* S. Rep. 109-14, at 39). The language and structure of CAFA thus indicates that Congress contemplated "broad federal court jurisdiction, with only narrow exceptions." Id. at 1164 (citations omitted). With this Congressional intent in mind, I must now decide if the "narrow" local controversy exception applies to the facts of this case.

### A.   *Whether the Plaintiffs Have Established that Greater than Two-Thirds of the Putative Class Members are Florida Citizens*

As noted above, a class action will qualify as a local controversy only where, *inter alia*, greater than two-thirds of the class members are citizens of the State in which the case was originally filed. Citizenship must be determined at the time the

case is filed. See 28 U.S.C. § 1332(d)(7). Citizenship in the jurisdictional context is equivalent to "domicile." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002); see also Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954) (stating that with respect to diversity jurisdiction, "citizenship has the same meaning as domicile") (binding precedent under Bonner v. Prichard, 661 F.2d 1206 (11th Cir. 1981)). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ." McCormick, *supra*, 293 F.3d at 1257-58 (citations and quotation marks omitted).

The plaintiffs argue that greater than two-thirds of the class members are Florida citizens. But, the plaintiffs have failed to establish the citizenship/domicile of any member of the putative class, let alone greater than two-thirds. Instead, the plaintiffs have relied exclusively on an affidavit filed by a paralegal working on their behalf, who has stated: "It is my belief that greater than two-thirds of the members of the proposed class are citizens of the State of Florida." (Emphasis added). This "belief" is based on (i) her personal familiarity "with the types of private property in the proposed class area and with many of the property owners and residents;" (ii) her review of "publicly available maps and aerials of the proposed class area and [her] speaking with homeowners and residents;" (iii) and her experience working "with a database obtained by [her law firm] Levin Papantonio from Metro-Market Trends, a Pensacola company that assembles databases of property owner information, including owner address information, pertaining to residential parcels contained within the area." Based on these materials and experience, the affiant would "estimate that approximately 75% of the residential parcels in the class area are homestead properties. Moreover, I estimate of the remaining estimated 25%, only a small portion have owners from out of Escambia County, with an even smaller portion being from out-of-state."

*Case No. 3:07cv421/RV/MD*

The plaintiffs' affidavit is extremely weak. As noted, the affiant's "beliefs" and "estimates" are based on her review of unidentified maps and aerials of, and her personal familiarity with, the proposed class area. It is also based on her "many" visits and conversations with an undisclosed number of residents and her work in a law firm database. She provides no information about the potential class members, however, such as names or addresses at the time the case was filed. She has also failed to account for class members who are no longer residents of Florida. Notably, a more detailed affidavit was rejected by the Eleventh Circuit in <u>Evans</u>, *supra*. There, an attorney, Jennifer Smith, reviewed and interviewed 10,118 potential plaintiffs, and she determined that 5,200 were members of the putative class. Of that number, Smith discovered that 4,876 (93.8%) were residents of the forum state of Alabama. The plaintiffs there argued that "if 93.8% of the known plaintiffs are Alabama residents, then surely two-thirds of the entire plaintiff class are Alabama citizens." In rejecting this argument, the Eleventh Circuit stated:

> Smith's affidavit tells us nothing about how she selected the 10,118 people who were considered "potential plaintiffs." We do not know if these 10,118 people represent both the property damage and personal injury classes. We do not know if Smith's method favored people currently living in Anniston over people who have left the area. In short, we know nothing about the percentage of the total class represented by the 10,118 people on which plaintiffs' evidence depends. Moreover, the class, as defined in the complaint, is extremely broad, extending over an 85-year period. We do not know if Smith made any effort to estimate the number of people with claims who no longer live in Alabama.
>
> In sum, plaintiffs have not carried their burden of demonstrating that more than two-thirds of the plaintiff class are Alabama citizens. We understand that evidence of class citizenship might be difficult to produce in this case. That difficulty, however, is to a considerable degree a function of the composition of the class designed by

> plaintiffs. The local controversy exception is designed to ensure that state courts hear cases of a truly local nature. We have no way of knowing what percentage of the plaintiff class are Alabama citizens. We conclude that the evidence adduced by the plaintiffs wholly fails to present a credible estimate of the percentage of the plaintiff class who are citizens of Alabama. Accordingly, we hold that Plaintiffs have failed to prove that more than two-thirds of the plaintiff class are Alabama citizens.

Evans, *supra*, 449 F.3d at 1166; see generally Preston v. Tenet Healthsystem Memorial Medical Center, Inc., 485 F.3d 793 (5th Cir. 2007) (denying remand to state court under CAFA local controversy exception where plaintiffs, *inter alia*, "made no effort to provide citizenship data, [only] stating in her motion that 'plaintiffs believe that the majority of the members of this class, and certainly more than 2/3 of the members are from Louisiana'") (emphasis in original); see also Phillips v. Severn Trent Environmental Servs., Inc., 2007 WL 2757131, at *3-4 (E.D. La. Sept. 19, 2007) (denying remand under local controversy exception where, even though there was "some intuitive appeal to the claim" that most of the putative class members were citizens of Louisiana because they were residents there, the plaintiffs failed to proffer evidence or any "additional indicia of Louisiana citizenship of the putative class members apart from their mere residency").

      Nonetheless, even though the plaintiffs' affidavit is very weak, on the facts of this case and my own personal knowledge of the area --- and in light of the type and location of the residences involved --- I believe it is reasonably likely that greater than two-thirds of the class members are citizens of Florida. See Mattera v. Clear Channel Communications, Inc., 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (party seeking remand failed to put forth evidence establishing citizenship of class members, but rather stated in conclusory fashion that more than two-thirds were citizens of the forum state; district court held, however, that on the facts of the case it was "reasonably likely" that greater than two-thirds of the class were New

*Case No. 3:07cv421/RV/MD*

York citizens); Dunham v. Coffeyville Resources, 2007 WL 3283774, at *3 (D. Kan. Nov. 6, 2007) ("CAFA does not require exact citizenship of each member of the plaintiff class; the court may still apply a CAFA exception where the pleadings and circumstances of the case are such that it is reasonably likely that two-thirds of the putative class members are citizens of the forum."). And in any event, as will be explained below, remand must be denied for the second reason advanced by the defendants. Consequently, because it ultimately has no bearing on how this issue must be decided, I assume that greater than two-thirds of the class members are indeed Florida citizens.

**B.    *The Plaintiffs Have Failed to Establish that Steltenkamp is a "Significant" Defendant***

The plaintiffs next argue that remand is proper under the local controversy exception because Steltenkamp is a defendant from whom "significant relief" is sought, and he is a defendant whose conduct forms a "significant basis" for the claims asserted by the class, under 28 U.S.C. § 1332(d)(4)(A)(i)(II). I do not agree.

CAFA does not define the term "significant relief," but its plain and ordinary meaning suggests that a district court should look to all the defendants in the case and the allegations against each; analyze the amount and type of relief being sought from the defendants; and consider each defendant's ability to satisfy the judgment sought by the class. "Significance," in other words, cannot be judged in a vacuum, but rather it must be assessed relative to the allegations against each defendant and the specific relief sought. The Eleventh Circuit has thus stated that "a class seeks 'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class." Evans, *supra*, 449 F.3d at 1167 (citations omitted). The Evans court further stated that "whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed

by the defendant's actions, <u>but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment</u>." <u>Id.</u> (emphasis added) (*quoting* <u>Robinson v. Cheetah Transportation</u>, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006)). As a practical matter, considering that class actions falling under CAFA involve $5,000,000 or more in damages, the plaintiffs in any CAFA case will necessarily seek the most "significant relief" from the defendants capable of paying that amount, typically corporate defendants with deep pockets, not mere employees or other entities. <u>Robinson</u>, *supra*, 2006 WL 468820, at *4 (explaining that, even though the individual defendant's negligence substantially contributed to the damages being claimed, "it does not follow that the class members seek significant relief from him. With an amount in controversy of at least $5,000,000, the plaintiffs will seek most of that relief from those who are capable of paying it: the corporate defendants."); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Escoe v. State Farm Fire and Cas. Co.</u>, 2007 WL 1207231, at *3 (E.D. La. April 23, 2007) (holding that insurance agent was not a defendant against whom significant relief was sought because, *inter alia*, the agent's "ability to pay any potential judgment is much smaller than State Farm's"); <u>Dunham</u>, *supra*, 2007 WL 3283774, at *3 (putative class filed suit against a number of defendants in environmental case, but the owner/operator of the facility "clearly [stood] before all the others in importance;" the liability of the other defendants was "derivative and indirect at best").

In interpreting the "significant defendant" language in CAFA, many courts have looked to the Senate Judiciary Committee Report. <u>See</u>, <u>e.g.</u>, <u>Eakins v. Pella Corp.</u>, 455 F. Supp. 2d 450, 452-53 (E.D.N.C. 2006); <u>Robinson</u>, *supra*, 2006 WL 468820, at *3-4; <u>see</u> <u>also</u> <u>Kearns v. Ford Motor Co.</u>, 2005 WL 3967998, at *9-11 (C.D. Cal. Nov. 21, 2005) (concluding that "significant" is ambiguous in CAFA and relying on the Senate Report to define that term). The Senate Report makes clear that to qualify for the local controversy exception

> there must be at least one real local defendant. By that, the Committee intends that <u>the local defendant must be a primary focus of the plaintiffs' claims --- not just a peripheral defendant</u>. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms significant basis for the claims asserted by the class.

<u>See</u> S. Rep. No. 109-14, at 40 (2005) (emphasis added). The Senate Report then goes on to illustrate the application of the "significant basis" and "significant relief" language through examples. One example is a class action brought in Florida, on behalf of Floridians against an out-of-state automobile manufacturer and a few in-state dealers, alleging a products liability defect. According to the report, the defendant dealers' conduct would not form a significant basis of the claims, nor would the dealers be defendants from whom significant relief is sought, because "[e]ven if the plaintiffs are truly seeking relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer." <u>Id.</u> at 41; <u>accord</u> <u>Robinson</u>, *supra*, 2006 WL 468820 (holding that individual defendant was "small change" and insignificant in class action where all the co-defendants were major national corporations involved in the transportation, railroad, and insurance industries). Another example in the Senate Report, although not factually on-point, is nonetheless illustrative:

> [I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. <u>Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself</u>.

*Case No. 3:07cv421/RV/MD*

Id. at 40 (emphasis added).[1]

As the Senate Report reveals, and as stated previously, the determination of whether "significant relief" is being sought from a defendant must involve an analysis of whether that defendant --- as compared with the other defendant(s) --- is capable of providing the plaintiffs with that relief. On the facts of this case, Steltenkamp is clearly "small change," and a "peripheral defendant," when compared with IPC. He has filed an affidavit detailing his role and job duties at IPC. This affidavit reflects that he is an employee of IPC, not an officer. Throughout the course of his employment as Environmental Manager of the Pensacola mill, Steltenkamp has reported to the Mill Manager. His authority is defined and limited by corporate policies, the Mill Manager, and the decisions of the various department managers regarding mill operations. Although Steltenkamp is a named defendant in each cause of action (except for the claim of unjust enrichment), this is plainly not enough. See Evans, *supra*, 449 F.3d at 1167 (significant relief was not sought from a co-defendant in an environmental case, even though the complaint stated that all the defendants were equally responsible for the alleged contamination). There can be no serious doubt that Steltenkamp's role at the mill is limited and that the he cannot provide "significant relief" to the plaintiffs. Notably, the plaintiffs themselves recognize in their complaint that only IPC "could remove

---

[1] I note that some courts have concluded that it is improper to look to the Senate Report to help interpret CAFA because it was issued 10 days after CAFA was signed into law. Caruso v. Allstate Ins. Co., 469 F. Supp. 2d 364, 370 (E.D. La. 2007); see also Kitson v. Bank of Edwardsville, 2006 WL 3392752, at *10 (S.D. Ill. Nov. 22, 2006) (concluding that because the Senate Report was issued days after the effective date of CAFA, this "post-enactment of legislative history [is] of little or no value in interpreting the statute"). I share their view that such legislative history should not be the only basis for a particular construction. However, the Eleventh Circuit has cited to and expressly relied on the Senate Report in applying CAFA. Evans, *supra*, 449 F.3d at 1163-64.

*Case No. 3:07cv421/RV/MD*

the ash and cease and desist from further creation and use of piles near residential properties." This is entirely consistent with Steltenkamp's affidavit, wherein he declared: "I do not . . . have the authority to shut down the Pensacola Mill or to modify the operations that produce ash generated by the Pensacola Mill's boilers or the handling of that ash." Nor can he pay any significant judgment should the plaintiffs succeed in this case. The plaintiffs impliedly recognize this as well, for they state in their complaint that only IPC "reaps tremendous economic benefit and avoids substantial costs" by failing to control the particulate matter and other materials from being blown onto their property. Consequently, Steltenkamp is not included in the unjust enrichment count and could not satisfy any large judgment. See Evans, *supra*, 449 F.3d at 1167 (stating that in determining whether a defendant is "significant" under CAFA, the court should analyze the defendant's "'ability to pay a potential judgment'") (citation omitted); cf. Mattera, *supra*, 239 F.R.D. at 80. Accordingly, the plaintiffs do not seek "significant relief" from Steltenkamp.

For much the same reasons, the plaintiffs have also failed to carry their burden of demonstrating that Steltenkamp's conduct forms a "significant basis" for the claims being asserted. As stated in Evans, the plaintiffs must provide evidence to show that he personally played a "significant role in the alleged contamination, as opposed to a lesser role, or even a minimal role." Evans, *supra*, 449 F.3d at 1167-68. Again, Steltenkamp was an employee and agent of IPC. His role was limited and defined by IPC corporate policy and the other managers at the mill. He did not have the authority to modify mill operations, nor has IPC made him personally responsible for environmental management at the mill, or delegated to him any duties that IPC may owe to the public. Although Steltenkamp is named as a defendant in most of the counts in the complaint, his affidavit makes clear that he did not personally release the ash or other particulate/airborne materials onto the

plaintiffs' properties. His liability, if any, is "derivative and indirect at best." See Dunham, *supra*, 2007 WL 3283774, at *3.[2]

### III.   CONCLUSION

For the above reasons, the plaintiffs' motion for remand (doc. 7) is DENIED.

DONE AND ORDERED this 7th day of January, 2008.

/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**

---

[2] In an attempt to demonstrate that Steltenkamp is a significant defendant, the plaintiffs have offered an unexplained string citation to several excerpts from a deposition that he gave in another case. I have reviewed each cited portion of this testimony. I agree with the defendants, who have pointed out that the testimony proves nothing more than Steltenkamp is responsible for compliance with environmental permits, that he manages the environmental group at the Pensacola mill, that his responsibilities include, *inter alia*, evaluating the potential beneficial uses of mill-generated ash, and, on occasion, he has responded to property owners' questions about possible ash deposits on their property. This testimony does not suggest, let alone establish, that he is a significant defendant. It does not, for example, show that he himself released the "particulate matter and other airborne materials" onto the plaintiffs' property (as claimed in the complaint), or that he would be able to satisfy any significant portion of a potential $5,000,000+ judgment.

*Case No. 3:07cv421/RV/MD*